IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA | * |   |
| Plaintiff | * |   |
| v. | * | Criminal Case No. JKB-10-0493 |
| STEVEN BLACKWELL | * |   |
| Defendant | * |   |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Again pending before the Court is the Defendant's Motion for a Reduced Sentence (ECF No. 180). The Government has responded (ECF No. 182) and the Defendant has replied (ECF No. 183). The Court previously denied the Motion (ECF No. 184), but after the Defendant appealed, the Court of Appeals vacated that denial and remanded the case for "a more robust and detailed explanation of why [the Court] denied [Blackwell's] motion to reduce." (ECF No. 189 at p. 4). The Court now supplies that "more robust and detailed explanation" and, upon that further explanation, again DENIES the Motion.

The Court acknowledges that the Defendant is eligible for a reduction under 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. The only question is whether, in its discretion, the Court should grant such a reduction.

The Sentencing Commission has recognized that with respect to some drug offenders, penalties previously authorized by statute and recommended by the Guidelines were too harsh. This Court and many others have excoriated the rigidity of pre-*Booker* sentencing guidelines that bound judges to impose sentences all out of proportion with the true severity of the underlying

criminal conduct, and which *advised* continuing to do so even after *Booker*. Sentencing courts have generally welcomed new guidelines, legislation, and appellate opinions that provide the opportunity to "right the wrongs" in which sentencing courts were previously complicit when they imposed decades in prison on apparently nonviolent, small-time and midlevel distributors of illegal drugs.

The problem in this case is that *this* Defendant, although eligible for a § 3582(c)(2) reduction, does not deserve one. Any sentence lower than the one he is currently serving would not be sufficient under 18 U.S.C. § 3553 in light of the criteria set out there, even taking into account his positive post-conviction conduct, and without any consideration whatsoever to any extra-record press releases and media reports.

In deciding to deny the Defendant a reduction previously, the Court did not miss the substantial submission made by his counsel, detailing his progress while incarcerated, to include achievement of his GED, a reduction in his security level such that he is now held in a non-secure camp, and his securing the trust of his custodians such that he is afforded significant work responsibilities which he evidently performs independently and to the satisfaction of those in charge. The Court explicitly notes those circumstances now in performing the reconsideration directed by the Court of Appeals. Although all inmates are expected to behave while they are incarcerated, and to progress through the security rating process, not all do. All inmates are expected to adhere to their programmatic regimens, including, when appropriate, obtaining a GED, but, again, not all do. Accordingly, in discharging the responsibility to consider the Defendant's post-conviction conduct, the Court now takes into account, positively, these indicia of reformation.

In its Opinion remanding this case for this more detailed explanation, when the Court of Appeals noted that "mere 'recitation of [the Defendant's] original criminal behavior ... is not the

standard ... for sentencing-reduction motions ...,'" surely it did *not* mean to imply that the facts underlying the original sentence are irrelevant when a sentence is under reconsideration pursuant to § 3582(c)(2). In originally declining to reduce the Defendant's sentence, and now, the Court is focused on the "Statement of Facts" that appears in the plea agreement (ECF No. 114). That Statement of Facts served not only as a sufficient factual basis for the pleas of guilty to Counts 1, 2, and 3 of the Superseding Indictment, but it also painted the picture of a massive heroin distribution network in which the Defendant occupied a leadership role and from which he derived "millions of dollars." The Defendant admitted that he acquired and then redistributed more than 30 kilograms of heroin as part of his illegal conduct. He agreed that he then often laundered these ill-gotten gains and used them to buy properties, cars, and other expensive items. He admitted that his involvement in the drug trade was so lucrative that he and his coconspirators were able to purchase seven different real estate parcels in Baltimore with the profits. Finally, he admitted that he participated in a scheme to frustrate the capacity of the Internal Revenue Service to discern his true income, thus blocking the IRS from the lawful collection of taxes on those funds.

In the Statement of Facts, the Defendant did not admit to participation in violent misconduct. However, in reflecting on the appropriateness of reducing the Defendant's sentence, the Court takes notice of the correlation between illegal drug trafficking and violent crime. There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale. The Court finds and concludes that those who participate in and profit from large scale, illegal drug trafficking activities are engaging in conduct that at least indirectly leads to widespread violence. Maybe it is a stretch to hold a small-time corner drug dealer responsible for the violence generally attendant to the drug trade, particularly when there is no direct evidence of his participation in or sponsorship of that violence. But when one is engaged at the level of the

3

Defendant in this case, it's a different story. A reduced sentence would impose an insufficient penalty, even considering the Defendant's good conduct and productive activity since he was convicted, because of the sheer scope of the illegal scheme in which he was involved, because of the violence that such large scale drug trafficking inherently (and foreseeably) brings with it, and because of his leadership role.

In reconsidering the Defendant's sentence, the Court is obligated to apply the familiar factors set out in 18 U.S.C. § 3553(a). However, in applying them, it is also permitted to take into account post-conviction conduct, and the Court expressly does so now.

First, with respect to the "history and characteristics of the Defendant," he does not have an aggravated criminal history apart from the instant offenses. He appears to be devoted to his family, particularly his son. His parents have set an example of reforming themselves after their own convictions. While incarcerated, the Defendant has progressed, speedily, through the BOP security classification process, suggesting overall good behavior. He has been assigned responsible positions as an inmate laborer. He has achieved his GED while incarcerated.

As to the "nature and circumstances of the offense," the Defendant played a leadership role in a massive heroin distribution ring which brought him millions of dollars unlawfully. His illegal activity netted him obscene profits while the product he trafficked poisoned drug users in Baltimore. The illegal drug trade brings violence with it, inherently. The most significant factor in the "nature and circumstances" analysis is the sheer scale of the Defendant's illegal activity. This circumstance distinguishes him from the vast majority of drug distributors sentenced by this Court. He was playing the game at a completely different level. It is this circumstance that most warrants the severe sentence that Judge Motz imposed on him, and it is against this circumstance that the positive details of his post-conviction behavior pale into relative insignificance.

4

Next, the Court turns to the "seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment." Illegal drug distribution, even when not accompanied directly by violence, is always a serious offense. Heroin amounts to poison, and many who ingest it end up dead as a result. That said, the decision to use illegal drugs is ultimately made by the user, and in most instances it is overstatement to say that the distributor is responsible for all of the misery experienced by downstream addicts. Accordingly, sentencing non-violent small-scale and midlevel drug distributors to decades in prison is disproportionate to their true culpability. But those who distribute on the scale that occurred in this case are in a different category, as previously noted. Most street level and even midlevel drug dealers never get rich, and they are not in the trade for the profits but instead merely to earn survival wages and to feed their own habits. This Defendant, by contrast, made millions from his powerful position. He profited from the exploitation of hundreds if not thousands of users who were far downstream from him. He is a completely different sort of offender and his crimes were much more serious than those of the typical, "scraping to get by" drug distributors who are more frequently before this Court. His just punishment is severe. Separately, only a lengthy term of incarceration will promote respect for the law.

As the Court reconsiders the sentence imposed on the Defendant, it appropriately takes into account the "need for deterrence." First, as to specific deterrence, the Court must insure that a sufficient penalty is imposed such that the Defendant himself is dissuaded from ever returning to this lucrative but illegal trade. As for general deterrence, it is important that the sentence in this case convey to the wider public this simple message: that while achieving a position of leadership in a large drug organization might be extremely profitable, it is nonetheless an unattractive option for the severe consequences it might bring.

The fifth factor the Court should consider is "the need to protect the public." As to this Defendant in particular, his submissions suggest that he now wishes to live by the rules. For now at least, the Defendant does not appear to pose an imminent threat to the public, and his continued incarceration at this point is not justified by an explicit need to protect the public. Indeed, the recent submission suggests that the Defendant is no longer being held in a secure facility.

In reconsidering the Defendant's sentence, the Court remains bound to "avoid unwarranted sentence disparities" as between this Defendant and others with similar records and culpability. While certainly other defendants who have trafficked in substantial quantities of illegal drugs have received sentencing reductions under § 3582, and the Court is aware of the same, a sentence of 240 months of incarceration falls somewhere near the middle of the Guidelines range now applicable, and a significant percentage of large-scale drug traffickers continue to receive Guideline sentences. A sentence near the middle of the applicable Guidelines range is not inappropriately disparate from the sentences imposed on others with similar records and culpability.

Next, the Court is required to consider any need to provide the Defendant with training and/or treatment. Any training/treatment needs of the Defendant's can be met while he is incarcerated or after he has been placed on supervised release. Accordingly, any needs for training or treatment do not inform the decision on how much time to impose, at least not in this case.

Finally, the Court is required to consider the advice of the Federal Sentencing Guidelines. As noted, a sentence of 240 months falls roughly near the middle of the applicable range of 210 to 262 months.

Taking into account the totality of the circumstances,[1] to most certainly include the specific elements of the Defendant's post-conviction conduct submitted by counsel and discussed above, and taking into account the Sentencing Commission's newer (and correct) advice that some previously-imposed drug sentences be reconsidered in light of more contemporary understandings of fairness, proportionality, and just desserts in this context, but also taking into account the facts and circumstances described in the underlying plea agreement, to which the Defendant admitted, and which described a massive, far-flung illegal drug distribution network in which the Defendant played a leadership role and which netted him "millions," the sentence that is sufficient, but not greater than necessary to comply with the purposes set out at 18 U.S.C. § 3553(a)(2) is the sentence that was originally imposed in this case, specifically including a 240 month term of incarceration.

As the Court of Appeals noted in its Opinion remanding this matter, "a sentence modification is not a plenary resentencing proceeding." (ECF No. 189, p. 2). When the Court originally declined to reduce the sentence, it stated:

> Exercising its discretion, and in consideration of the full scope of the record, particularly the circumstances agreed by the parties at the time of the conviction, and viewing all of this through the lens of the §3553(a) factors, the motion is DENIED.

The referenced "circumstances agreed by the parties" were the facts set out in the plea agreement. Perhaps that reference was too general to convey the care that the Court took in examining the record on which the sentence was originally imposed. Moreover, in denying the reconsideration the Court did not explicitly acknowledge the specific mitigating circumstances from the post-conviction phase of the Defendant's life, even though the law requires that such factors be

---

[1] The Court is generally aware of the U.S. Attorney's suspicions that the Defendant was involved in even more aggravated conduct and that there are press statements to this effect. Without more, though, the Court finds that information unreliable, and it is not taken into account in deciding this motion to reduce.

addressed. Those positive factors were considered, but the earlier ruling was too brief and too terse. Judges are always required to explain themselves and "show their work." That said, while no litigant's plea should ever be shortchanged, in a context where a "plenary" review is not contemplated by the law, busy trial courts can be tempted to abridge explanation of their rulings. In this instance, the abridgement was too extreme.

Upon the foregoing, the MOTION FOR RECONSIDERATION (ECF No. 180) is DENIED. All provisions of the Judgment dated January 20, 2012 (ECF No. 119) shall remain in effect. Dated this 19 day of February, 2020.

BY THE COURT:

James K. Bredar
Chief Judge